IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs March 4, 2008

## STATE OF TENNESSEE v. SAMUEL McALISTER

**Appeal from the Circuit Court for Madison County**
**Nos. 05-228 & 05-493     Donald H. Allen, Judge**

---

**No. W2007-01242-CCA-R3-CD  - Filed August 12, 2008**

---

The defendant, Samuel McAlister, pled guilty in case number 05-228 to two counts of sale or delivery of cocaine, Class C felonies, and one count of sale or delivery of more than .5 gram of cocaine, a Class B felony.  In case number 05-493, the defendant pled guilty to an additional count of sale or delivery of more than .5 gram of cocaine, one count of possession of drug paraphernalia, a Class A misdemeanor, and one count of possession of a weapon with intent to employ it in an offense, a Class E felony.  In exchange for his guilty pleas, the defendant received an effective sentence of eight years to be served under community corrections supervision.  The trial court subsequently revoked the community corrections sentences and resentenced the defendant to an effective sentence of twelve years in the custody of the Department of Correction.  In this appeal as of right, the defendant contends that the Madison County Circuit Court imposed an excessive sentence.  Following our review, we affirm the judgments of the trial court.

**Tenn. R. App. P.  3 Appeal as of Right; Judgments of the Circuit Court are Affirmed.**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which THOMAS T. WOODALL and NORMA MCGEE OGLE,  JJ., joined.

George Morton Googe, District Public Defender; and Gregory D. Gookin, Assistant Public Defender, attorneys for appellant, Samuel McAlister.

Robert E. Cooper, Jr., Attorney General & Reporter; Sophia S. Lee, Assistant Attorney General; James G. Woodall, District Attorney General; and Shaun A. Brown, Assistant District Attorney General, attorneys for appellee, State of Tennessee.

### OPINION

The record reflects that on July 25, 2005, the defendant entered guilty pleas in case number 05-288 for offenses that occurred in July 2004.  On November 21, 2005, the defendant entered guilty pleas in case number 05-493 to the additional offenses that occurred in May 2005.  Ultimately for all of these offenses, the defendant received an effective sentence of eight years to be served on

community corrections. On March 20, 2007, a probation revocation warrant issued alleging that the defendant violated his community corrections sentences by failing to remain drug free after a drug screen revealed evidence of marijuana use. A superceding warrant issued on March 26, 2007, with additional allegations that the defendant failed to make monthly payments toward court costs and failed to complete court-ordered community service. [1] At the April 2, 2007, revocation hearing the defendant admitted to all of the alleged violations, and the trial court revoked the community corrections sentences.

The twenty-seven-year-old defendant testified that he had only used marijuana once – the time that he tested positive leading to the revocation warrant. He explained that he only smoked the marijuana because he was depressed about his mother's failing health. He also explained that he had not performed his community service work because "[t]he way I figured it is I had eight years. I had a period of over eight years to do it. I didn't just exactly know that you had to do it off the top. I didn't know that." The defendant added that he was now prepared to complete his community service hours "[a]s quick as possible." He testified that he had maintained employment with the same logging company for several years but that much of his income went to support his five children. He stated that he lived with his mother who was ill and who relied upon him to take her to doctor appointments. The defendant reported that his employer had offered him additional work to help him pay his fines and costs if the court chose to place him back on probation.

On cross-examination, the defendant admitted that he was behind on child support payments but had gotten caught up with the help of family and friends. He explained that his work with the logging company often depended upon the weather, but that his employer had promised him work in the saw mill when weather prevented him from working in the field. When questioned by the trial court about his recollection that his community corrections sentence required the performance of eight hours of community service each month, the defendant claimed to have forgotten that aspect of his community corrections obligations.

The defendant's mother, Margaret McAlister, testified that she needs her son at home with her because she is sick and he helps care for her. She stated that she assisted him in paying his court costs because his work had been sporadic due to the weather. She urged the trial court to place the defendant on probation so that he could care for her and his five children.

Thomas Hardin, the defendant's girlfriend's father, testified that the defendant works hard to provide for his mother and children. He added that the defendant had exercised poor judgment in the people he associated with and that, although he was twenty-seven years old, the defendant really does not have the intelligence of a twenty-seven year old.

---

[1] The record reflects that an earlier probation violation warrant issued on September 6, 2006, alleging that the defendant had violated his community corrections sentence by his September 5, 2006, arrest for attempted murder, aggravated robbery, and evading arrest. On December 15, 2006, the trial court dismissed the warrant due to the grand jury's return of a no true bill on the charges and failure to secure the alleged victim's attendance at scheduled revocation hearings.

Jennifer Hardin, the defendant's girlfriend and mother of his fifth child, testified that she has known the defendant for eleven or twelve years. She stated that the defendant sees his son every day. She testified that she does not work and relies on the defendant completely for financial support.

Beverly Butler, the defendant's aunt, testified that she had done a lot to help the defendant get caught up on his financial obligations. She stated that he needed to be on probation so that he could pay her back some of the money she had loaned him. She acknowledged that she helped him in the past and that it was now "time for him to straighten up and grow up and act like a man."

At the conclusion of the sentencing hearing, the trial court resentenced the defendant to twelve years for each sale or delivery of more than .5 gram of cocaine offense and six years for each sale or delivery of less than .5 gram cocaine offense based upon its findings that the defendant had a previous history of criminal convictions and an unwillingness to comply with conditions of a sentence involving release into the community. Tenn. Code Ann. § 40-35-114 (2) and (9) (2003). The trial court considered the defendant's admissions at the revocation hearing as evidence of his unwillingness to comply with conditions of release. The trial court considered a letter by the defendant asking for another chance and stated:

> You know, [the defendant] got his chance back in July of '05 when I put him on Community Corrections supervision, and then he got another chance in his second case, which is 05-493, which involved [the] sell of cocaine. He pled guilty in that case November the 21st of 2005 and as part of the plea agreement, he received concurrent sentences. So, he's been given a couple of chances at Community Corrections supervision, but unfortunately for Mr. McAlister, [he] has not taken advantage of the opportunity.

As mitigation, the trial court considered the defendant's consistent work history, but the trial court further commented that the defendant "had the ability to pay on his fines and court costs each and every month as he was ordered to do, but unfortunately [the defendant] chose to spend his money elsewhere . . . I don't understand that, Mr. McAlister. You could have done this." The trial court ordered the sentences to be served concurrently in the custody of the Department of Correction. The defendant now appeals this sentencing determination.

ANALYSIS

*Standard of Review*

An appellate court's review of sentencing is de novo on the record with a presumption that the trial court's determinations are correct. Tenn. Code Ann. § 40-35-401(d) (2003). As the Sentencing Commission Comments to this section note, on appeal the burden is on the defendant to show that the sentence is improper. This means that if the trial court followed the statutory sentencing procedure, made findings of fact that are adequately supported in the record, and gave due consideration and proper weight to the factors and principles that are relevant to sentencing

under the 1989 Sentencing Act, the court may not disturb the sentence even if a different result were preferred. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

However, "the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In this respect, for the purpose of meaningful appellate review,

> [T]he trial court must place on the record its reasons for arriving at the final sentencing decision, identify the mitigating and enhancement factors found, state the specific facts supporting each enhancement factor found, and articulate how the mitigating and enhancement factors have been evaluated and balanced in determining the sentence.

State v. Jones, 883 S.W.2d 597, 599 (Tenn. 1994) (citation omitted); see Tenn. Code Ann. § 40-35-210(e) (2003). The weight to be afforded an enhancement or mitigating factor is left to the trial court's discretion so long as its use complies with the purposes and principles of the 1989 Sentencing Act and the court's findings are adequately supported by the record. Id. § (d)-(f); State v. Moss, 727 S.W.2d 229, 237 (Tenn. 1986); see Ashby, 823 S.W.2d at 169.

In conducting its de novo review, the appellate court must consider (1) the evidence, if any, received at the trial and sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct, (5) any mitigating or statutory enhancement factors, (6) any statement that the defendant made on his own behalf, and (7) the potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, -210 (2003); see Ashby, 823 S.W.2d at 168; Moss, 727 S.W.2d at 236-37.

In his brief, the defendant acknowledges the trial court's authority to revoke a community corrections sentence and resentence a defendant within the statutory range applicable to the offenses. Tenn. Code Ann. § 40-36-106(e)(4). However, he contends that the trial court's application of the enhancement factors does not support an imposition of the maximum effective sentence of twelve years. He argues that his prior criminal history was not serious, consisting only of convictions for various traffic offenses, one simple assault and one vandalism. He further argues that, although he did violate the terms of his community corrections sentence, "the trial court should only have afforded this factor slight weight in re-sentencing" the defendant. The defendant also argues that the trial court should have given more consideration to his history of providing for his girlfriend and children as mitigation. The state contends that the record fully supports the trial court's findings and determination of sentence in this case. Following our review, we agree with the state.

With the entry of the guilty plea, the trial court allowed the defendant the opportunity to demonstrate to the court his apparent intelligence and ability to lead a responsible life. The defendant failed to comply with the most basic conditions of his community corrections sentence; these conditions, by his own admissions, were explained fully at the guilty plea submission hearings. The defendant candidly admitted to the violations at the revocation hearing. Only after being

revoked did the defendant express a desire to comply with the conditions. Furthermore, the evidence does not support the application of the defendant's proposed mitigating factor regarding his financial support of his children. Rather, the testimony at the sentencing hearing revealed a defendant who has been remiss in supporting at least four of his children, despite an apparent steady work history, and who has relied upon the assistance of family members to pay child support, as well as court costs. Simply put, the defendant wasted the opportunity presented by the plea agreement. We cannot conclude that the trial court abused its discretion in its application of enhancement factors and imposition of sentences in this case. On the contrary, the record supports the enhancement factors applied by the trial court and further establishes that the trial court followed the applicable sentencing considerations. The judgment of the trial court is affirmed.[2]

## CONCLUSION

Upon consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.

_____
D. KELLY THOMAS, JR., JUDGE

---

[2] We do note that the judgment for sale or delivery of more than .5 gram of cocaine in case number 05-228 erroneously notes the offense as a Class C felony. Instead it should reflect a Class B felony conviction. The trial court should correct the judgment to reflect the accurate felony classification upon remand.